<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORRAINE SCOCOZZA,<br><br>    Plaintiff,<br><br>  v.<br><br>STATE OF NEW JERSEY,<br><br>    Defendant. | Civil Action No. 14-2095 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

  Plaintiff Lorraine Scocozza ("Plaintiff") brings this employment discrimination suit against Defendant State of New Jersey ("Defendant") for alleged discrimination on the basis of gender in connection with the decision not to hire Plaintiff for a position with the New Jersey Department of Treasury, State Lottery Division. In her Complaint, Plaintiff asserts two claims: (1) violation of Title VII, 42 U.S.C. § 2000e-2, and (2) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12. On November 25, 2014, the Court granted Defendant's Motion to Dismiss with respect to Count Two, violation of the NJLAD. (ECF No. 14.) Defendant now argues that Plaintiff's remaining Title VII claim is barred by laches and moves for summary judgment as to this claim. (ECF No. 23.) Plaintiff filed an opposition brief (ECF No. 25), and Defendant replied (ECF No. 32.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion for summary judgment is denied.

I.  **Background**

As Defendant asserts a laches defense, the approximately twenty-year series of events that preceded Plaintiff's filing of the Complaint is relevant to this motion. This matter arises out of Plaintiff's application for the position of Senior Account Adjuster with the Division of the New Jersey State Lottery ("Lottery Division"). (Notice of Removal, Ex. A ("Compl."), ECF No. 1-1.) Plaintiff interviewed for the position with the Lottery Division on November 5, 1994, and received positive feedback. (*Id.* ¶¶ 10-11, 13.) In December 1994, Plaintiff was given an offer of employment. Plaintiff accepted the offer and received a start date. (*Id.* ¶¶ 17-18.) Later that month, however, Plaintiff was informed that there were problems with her application and that another interview would be necessary. (*Id.* ¶¶ 20, 25.) During a conversation with her contact at the Lottery Division, Plaintiff was informed that "the high ups at the Lottery [Division] had a big problem with a blonde woman like you going into Newark." (*Id.* ¶ 24.) On January 2, 1995, just prior to her scheduled second interview, Plaintiff was informed that the interview was cancelled and the position was not going to be filled. (*Id.* ¶ 27.)

On January 19, 1995, Plaintiff filed a claim of discrimination with the New Jersey Department of Law and Public Safety, Division of Civil Rights (the "DCR") and with the Equal Employment Opportunity Commission ("EEOC"). (Pl.'s Counterstatement of Facts ("COF") ¶¶ 23-24, ECF No. 25.) On July 7, 1995, Plaintiff received a letter stating that there was an extensive backlog, and that the DCR was unable to project a timeframe in which the matter would be processed. (*Id.* ¶ 27.) During 1996, Plaintiff was very ill and her husband made monthly calls to the DCR to determine the status of her claim. (*Id.* ¶ 28.) Each time Mr. Scocozza called, he was advised that there was a "huge backlog due to many complaints." (*Id.* ¶ 29.) On February 5, 1998, the DCR issued a decision finding probable cause that Plaintiff had been denied the position

because of her gender. (*Id.* ¶ 33.) On May 22, 1998, the DCR advised Plaintiff that conciliation efforts were unsuccessful, and on March 8, 2001, the DCR issued its final finding that the State had engaged in unlawful discrimination against Plaintiff in the application process. (*Id.* ¶¶ 34, 43.) While the DCR found that Plaintiff had been discriminated against in the application process, it did not find that Plaintiff was not hired because of her sex. (*Id.* ¶ 43.) Plaintiff was advised that if she did not agree with the DCR's decision, she could file an appeal with the EEOC under the Weight of Evidence Rule. (*Id.* ¶ 44.) On June 20, 2001, Plaintiff wrote to the EEOC to request that it conduct a weight of evidence review of the DCR's decision. (*Id.* ¶ 45.) Thereafter, from 2002 to 2004, "either Plaintiff, her husband, or both contacted the EEOC" at least once a month to determine the status of her claims. (Certification of Lisa Marone, Ex. KK ("Pl.'s Cert.") ¶¶ 5-7, ECF No. 25-5.)

In May of 2005, Plaintiff learned that her caseworker at the EEOC, Charles Brown, believed that a ruling had already been entered in Plaintiff's favor, and thereafter Plaintiff's attorney sent the EEOC correspondence requesting that it act promptly on Plaintiff's request for a weight of evidence review of the DCR's Order. (Pl.'s COF ¶¶ 51-52.) Thereafter, during the years of 2006 and 2007, either Plaintiff, her husband, or both contacted the EEOC once per month to determine the status of her claims. (Pl.'s Cert. ¶¶ 9-11.) On March 1, 2008, Plaintiff complained in writing to the Office of Inspector General ("OIG") regarding the EEOC's handling of her claim, and later that month she received a letter from the EEOC advising her that the OIG would investigate her complaints. (Pl.'s COF ¶¶ 55-57.) Thereafter, on May 1, 2008, the EEOC informed Plaintiff that the weight of evidence review would be conducted, and on December 18, 2008, the EEOC determined that the evidence obtained during its investigation established a Title VII violation. (*Id.* ¶¶ 58, 61.)

3

In January 2009, Plaintiff was notified that the matter was being referred to the United States Department of Justice ("DOJ.") (*Id.* ¶ 62.) Unknown to Plaintiff, the EEOC failed to send Plaintiff's case file to the DOJ. (*Id.* ¶ 63.) From January 2009 until the DOJ issued a Right to Sue Letter to Plaintiff on November 8, 2013, Plaintiff called the DOJ "at least one time per week" to inquire as to the status of her claims. (Pl.'s Cert. ¶ 13; Pl.'s COF ¶ 81.) On November 23, 2009, Plaintiff's counsel sent a letter to the DOJ requesting its prompt action. (Pl.'s COF ¶ 64.) On April 3, 2010, Plaintiff wrote to President Barack Obama to request assistance in moving her claim forward. (*Id.* ¶ 65.) In 2011, Plaintiff wrote to her senator and congressman to request assistance in moving her claim forward. (*Id.* ¶¶ 66-67.)

On May 24, 2011, the DOJ advised Plaintiff that it never received her file from the EEOC. (*Id.* ¶ 69.) Thereafter, Plaintiff's congressman wrote to Plaintiff to advise her that he had made an inquiry with the EEOC on her behalf, and on June 27, 2011, the EEOC responded to this inquiry. (*Id.* ¶¶ 70-71.) In its response, the EEOC "apologize[d] for apparently not forwarding the case to the DOJ in a timely manner and for not being able to locate the EEOC file." (Certification of Lisa Marone, Ex. GG ("June 27, 2011 EEOC Letter") at 2, ECF No. 25-5.) On August 1, 2011, Plaintiff sent files to the EEOC, and on June 20, 2012, Plaintiff wrote to the EEOC to complain about the delay in processing her claims. (Pl.'s COF ¶¶ 73, 75.) On July 13, 2012, the EEOC sent correspondence to Plaintiff stating that it "cannot predict how long it will take [the] DOJ to make its decision" on Plaintiff's claims. (Certification of Lisa Marone, Ex. LL ("July 13, 2012 EEOC Letter") at 1, ECF No. 25-2.) On July 20, 2013, Plaintiff wrote to the DOJ to inquire about the status of her claims. (Pl.'s COF ¶ 79.) On November 8, 2013, the DOJ issued a Notice of Right to Sue, and Plaintiff filed her Complaint on February 7, 2014. (*Id.* ¶¶ 81-82.)

On April 3, 2014, Defendant removed the case to this Court. (Notice of Removal, ECF No. 1.) On November 25, 2014, the Court dismissed Plaintiff's claim under the NJLAD, leaving only Plaintiff's Title VII claim. (ECF No. 14.) Defendant now argues that Plaintiff's remaining Title VII claim is barred by laches and moves for summary judgment on this claim, pursuant to Federal Rule of Civil Procedure 56. (ECF No. 23.)

**II.   Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no genuine [dispute] of material fact,

since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (internal quotation marks omitted). If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Analysis

In its motion for summary judgment, Defendant argues that Plaintiff's remaining Title VII claim is barred by laches. (Def.'s Moving Br. 3, ECF No.23.) In particular, Defendant argues that "Plaintiff passively waited for the Right to Sue Letter, which did not arrive until 18 years after she filed [the] Charge [and] [a]s a result of the delays in this matter, the EEOC file is no longer available because it was destroyed by the EEOC." (*Id.* at 7.) Thus, Defendant argues that it is entitled to judgment as a matter of law. The Court disagrees.

"Laches . . . is rarely subject to summary judgment and cannot usually be resolved without some preliminary evidentiary inquiry." *Robinson v. Am. Int'l Adjustment Co., Inc.*, No. 90-1270, 1990 WL 100309, at *5 (D.N.J. Aug. 9, 1990). To establish the equitable defense of laches, a defendant must show that (1) the plaintiff did not diligently pursue her claims; and (2) the defendant was prejudiced. *See Costello v. United States*, 365 U.S. 265, 282 (1961). "The lack of diligence must be inexcusable and the delay must cause the prejudice." *Robinson*, 1990 WL 100309, at *5. Since laches is a defense, the burden of establishing both of these elements is on the defendant. *See E.E.O.C. v. Great Atl. & Pac. Tea Co.*, 735 F.2d 69, 81 (3d Cir. 1984).

With respect to the first element, Plaintiff's lack of diligence, Defendant asserts that the "300 hundred pages of exhibits [to Plaintiff's Brief in Opposition to Summary Judgment] . . . show

6

years of inactivity." (Def.'s Reply Br. 1, ECF No. 32.) In particular, in support of its assertion that Plaintiff did not diligently pursue her claims, Defendant cites the following delays in this case: (1) four years passed between Plaintiff's June 20, 2001 request to the [EEOC] for a Weight of Evidence review of the findings of the [DCR] and a May 9, 2005 phone call from the EEOC advising Plaintiff that it took no action on her case during the previous four years; (2) another three years passed between the May 9, 2005 phone call from the EEOC and any further communication from the EEOC; (3) one year passed before Plaintiff took any action following the EEOC's Determination and Notice of Conciliation Failure, and the action that Plaintiff took was to write to President Barack Obama on April 3, 2010, despite the instructions in the Notice of Conciliation Failure to direct questions to the Department of Justice; (4) one year passed after writing to President Barack Obama before Plaintiff wrote to her congressman to request a status update from the DOJ in 2011; and (5) nearly one year passed before Plaintiff contacted the DOJ to confirm that it had received her case file. (*Id.* at 2-3.)

Contrary to Defendant's assertion, however, Plaintiff has asserted that she was actively pursing her claims during these periods. In particular, Plaintiff has asserted that during these delays either she, her husband, or both were contacting the EEOC at least once per month to inquire as to the status of the claims. (Certification of Lisa Marone, Ex. K ("Anthony Scocozza's Cert.") ¶¶ 2, 4, ECF No. 25-3; Pl.'s Cert. ¶¶ 5-7.) Indeed, from January 2009 until the DOJ issued the Right to Sue Letter on November 8, 2013, Plaintiff declares that she "called the DOJ at least one time per week." (Pl.'s Cert. ¶ 13.) In addition, it appears that the EEOC admitted that the delay in 2010 was due, in part, to the EEOC's failure to send Plaintiff's case file to the DOJ. (June 27, 2011 EEOC Letter at 2.) Construing these facts and their logical inferences in the light most favorable to the Plaintiff, the Court finds that there is a genuine dispute of material fact as to

whether Plaintiff has fulfilled her minimum responsibilities in pursuing a claim. *See Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 74 (3d Cir. 1986) (recognizing that "Title VII actions are subject to the equitable defense of laches when [a] plaintiff has not fulfilled . . . her minimum responsibilities in pursuing a claim") (citing *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 679-80 (7th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986); *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958-60 (9th Cir. 1979); *McLemore v. Interstate Motor Freight*, 33 Fair Empl. Prac. Cas. 1384, 1386-87 (N.D. Ala. 1984)); *see also Waddell*, 799 F.2d at 77 ("[A]lthough plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings where it would appear to a reasonable person that no administrative resolution will be forthcoming, whether the circumstances warranted the delay in a particular case requires an ad hoc determination.") Accordingly, Defendant has not established Plaintiff's lack of diligence as a matter of law.[1]

## IV. Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment is denied.

s/Michael A. Shipp
**Michael A. Shipp**
**United States District Judge**

**Dated:** March 30, 2016

---

[1] Because the Court has concluded that there is a genuine dispute of material fact with respect to Plaintiff's diligence, the Court need not address the issue of Defendant's alleged prejudice. *Robinson*, No. 90-1270, 1990 WL 100309, at *6 ("The elements of a laches defense are conjunctive. Because the Court has concluded that there is a material issue of fact with respect to plaintiff's diligence the [c]ourt need not address the issue of prejudice to [defendant].").